UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 4:22-CV-40119

| | |
|---|---|
| **MATTHEW S. HOWE,** *Plaintiff*, <br><br> v. <br><br> **MASSACHUSETTS DEPARTMENT OF CORRECTON,** *Defendant.* | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Defendant violated Plaintiff's right to the free exercise of religion by requiring that, as a condition of his continued employment, he be injected with a product advertised as a COVID-19 vaccine, and (after Defendant had demonstrated that his sincerely held religious beliefs prevented him from being injected with the products) by suspending and terminating his employment. Defendant violated the both the Civil Rights Act and the Massachusetts anti-discrimination law, M.G.L. c. 151B.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5 (f) and 28 U.S.C. §§ 1331 and 1343 (a) and has supplemental jurisdiction over State-law claims.

## PARTIES

3. Plaintiff Matthew S. Howe is an inhabitant of Londonderry, New Hampshire.

4. Defendant Department of Correction (DOC) is an agency of the Commonwealth of Massachusetts and is a person within the meaning of 42 U.S.C. § 2000e (a), and is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5).

## EEOC CHARGE

5. Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC) (Charge No. 523-2022-00526). The EEOC issued a right-to-sue notice on August 30, 2022. Plaintiff brings this case within 90 days of receipt of the EEOC right-to-sue notice. All preconditions for filing this lawsuit have been performed or have occurred.

## FACTS

6. On or about August 19, 2021, Governor Charles D. Baker issued Executive Order 595 "E.O. 595"), which requires all employees of the Commonwealth's Executive branch to submit proof of full vaccination against COVID-19 by October 17, 2021, as a condition of continued employment. By way of E.O. 595, the Governor directed the Human Resources Division to issue a written policy with a procedure to allow "limited exemptions from the vaccination requirement where a reasonable accommodation can be reached for any employee... who is unwilling to receive COVID-19 vaccination due to a sincerely held religious belief." A true copy of E.O. 595 is attached hereto as Exhibit A.

7. The products known as "COVID-19 vaccines" produced by Johnson & Johnson, Moderna, and Pfizer do not prevent recipients from contracting and transmitting COVID-19.

8. According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%.[1] As cardiologist Dr. Aseem Malhotra stated in the *European Scientist*:

> [W]hat was reported in the mainstream news as being 95% effective against infection was in fact relative risk reduction, not absolute risk reduction from the double blind randomized controlled trial that took place during the more lethal circulating post-Wuhan ancestral strain of the virus. That specific NEJM paper

---

[1] https://www.thennt.com/review-covid-analysis-2020/

which underpinned the emergency use authorization of the Pfizer mRNA vaccine actually revealed an absolute risk reduction (ARR) of 0.84%. In other words, for every 119 individuals vaccinated one person would be protected from being infected... Furthermore, as newer and thankfully, less lethal, mutated strains became dominant, any protection against infection at the very least became less effective and likely completely ineffective, even if there is some significant (as yet to be fully determined in absolute individual terms) protection against serious illness and death.[2]

9. The number of prominent people who have received the products advertised as "vaccines" and "boosters" and gone on to catch COVID-19 makes the reality difficult to ignore. For example, Dr. Anthony Fauci (director of the National Institutes of Allergy and Infectious Diseases) — fully "vaccinated" and "boosted" — caught COVID-19 in June 2022, took Paxlovid and promptly caught it again.[3]

10. It is common knowledge that President Joe Biden — vaccinated and double-boosted[4] — recently recovered from another bout of COVID-19. He received his second booster dose on Wednesday, March 30, 2022, and tested positive for COVID-19 on July 21, 2022, just 15 weeks later. He took Paxlovid, and (like Dr. Fauci) caught COVID-19 again.[5] It is also common

---

[2] Dr. Aseem Malhotra, "Being Pro-Covid 19 Vaccines and Pro-transparency are not mutually exclusive – ending all mandates globally and accessing the raw data is now essential to restore trust," *European Scientist* (August 16, 2022).

https://www.europeanscientist.com/en/features/being-pro-covid-19-vaccines-and-pro-transparency-are-not-mutually-exclusive-ending-all-mandates-globally-and-accessing-the-raw-data-is-now-essential-to-restore-trust/

[3] https://www.cnbc.com/2022/07/27/as-more-people-report-covid-rebounds-after-paxlovid-experts-insist-cases-are-rare.html

[4] https://www.politico.com/news/2022/03/30/biden-receive-second-covid-booster-00021667

[5] It is also well known that the "vaccinated" and thrice-boosted Canadian Prime Minister, Justin Trudeau, who is 50 years old, has caught COVID-19 twice (so far). He was "vaccinated" on April 23, 2021, received a booster on January 4, 2022, caught COVID-19 later that month, received a second shot in April 2022, caught COVID-19 for the second time in June, then got a third "booster" shot in July.

knowledge that First Lady Jill Biden — twice "vaccinated" and twice "boosted,' according to her spokesperson — has also caught COVID-19.[6]  It was also widely reported that former President Barack Obama received his "vaccination." in early March, 2021.[7]  In March 2022, ex-President Obama — "vaccinated" and "boosted" — announced that he had caught COVID-19.[8]

11.     The inefficacy of the products is something that public health officials are now acknowledging publicly.  Dr. Deborah Birx, former White House Coronavirus Response Coordinator, stated recently: "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines."[9]  Similarly, as former CDC director Dr. Tom Frieden stated, "protection against infection through vaccination is something of a flash-in-the-pan phenomenon."  Dr. Anthony Fauci now concedes that vaccine-induced immunity "isn't durable":

> "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[10]

---

https://www.cnn.com/2022/06/13/americas/justin-trudeau-covid19-intl/index.html;
https://www.businessinsider.com/justin-trudeau-got-moderna-booster-shot-after-his-astrazeneca-jab-2021-7;
https://www.politico.com/news/2022/06/13/trudeau-positive-covid-00039165

[6] https://www.reuters.com/world/us/us-first-lady-jill-biden-tests-positive-covid-19-statement-2022-08-16/

[7] https://www.harpersbazaar.com/celebrity/latest/a35810004/michelle-obama-barack-obama-vaccine-selfie/; and https://thehill.com/blogs/in-the-know/in-the-know/542736-obamas-vaccinated-against-covid-19/

[8] https://www.cnn.com/2022/03/13/politics/barack-obama-covid-positive/index.html

[9] https://youtu.be/8AYqTgtIgLA

[10] https://www.marketwatch.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525?siteid=nf-rss

12. Acknowledging this reality, the CDC changed its COVID-19 guidance in August 2022, so that its prevention recommendations "no longer differentiate based on a person's vaccination status."[11]  The CDC now concedes that the products advertised as COVID-19 vaccines do not prevent recipients from catching, getting sick from, and spreading COVID-19.

13. It is now clear that Pfizer did not even test for whether its products would prevent recipients from spreading COVID-19.  On October 10, 2022, when Robert Roos MEP asked Janine Small (President of International Developed Markets at Pfizer) whether Pfizer tested the "vaccine" to determine whether it would stop transmission, Ms. Small informed the European Union Parliament that the answer to the question is "no."

14. Figures from the Massachusetts Department of Public Health (DPH) figures show that since at least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

15. Massachusetts DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19.

16. The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System.

15. In mid-July the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases, i.e. people who were injected with the products and then caught the disease. The DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated." It does not say why.

---

[11] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

16.     The latest — and apparently final — weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

- As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

- 10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[12]

17.     Below the figures, the DPH includes this note about undercounting both of cases and hospitalizations:

> Identification of cases in vaccinated people relies on matching data between the system of record for cases and vaccinations. The number of cases in vaccinated people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

18.     For most people who display some symptoms of COVID-19, those symptoms are mild (e.g. sore throat, slight cough, and runny nose) and do not require a visit to a healthcare provider. If a person with COVID-19 does not report the infection to a healthcare provider, nobody enters the case into a healthcare provider's database, and it does not appear in the DPH figures.

19.     Accordingly, the DPH case count of 617,337 "fully vaccinated" people who subsequently caught COVID-19 excludes those who do not report the fact to a healthcare provider.

20.     Plaintiff is a Christian who was employed by Defendant as a Correction Officer from 2013 until February 3, 2022.

---

[12] Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

21.   Defendant adopted a policy consistent with E.O. 595 that required employees to be injected with products advertised as "COVID-19 vaccines.".

22.   On or about September 26, 2021, Plaintiff requested an exemption from the requirement. A true copy of the request is attached hereto as Exhibit B.

23.   Defendant scheduled an interview for Plaintiff with Defendant's ADA Director, Carol Thomas.  However, on October 1, 2021, Defendant cancelled that interview and instead scheduled an interview with a panel of three of Defendant's employees.  Plaintiff confirmed to the panel that his religious beliefs prevented him from being injected with the products.  The panel did not attempt to determine whether Defendant could accommodate Plaintiff's beliefs.

24.   On or about October 15, 2021, Defendant denied Plaintiff's request, stating that he had articulated a "philosophical viewpoint not a religious belief."  A true copy of the denial letter is attached hereto as Exhibit C.  Defendant did not state how it arrived at that conclusion, or what criteria — if any — it employed in order to distinguish religious beliefs from philosophical viewpoints.

25.   On September 18, 2021, Plaintiff sustained an injury at work (an inmate injured him) that required him to take medical leave.  Plaintiff qualified for and began to receive Workers Compensation.  Defendant caused Plaintiffs Workers Compensation to terminate on December 24, 2021.

26.   On or about January 13, 2022, Defendant informed Plaintiff that he was suspended for 5 days without pay and that he could avoid further adverse action by "coming into compliance," i.e. being injected with the products.  In addition, Defendant informed Plaintiff that if he "voluntarily" resigned, rather than waiting to be terminated, and then agreed to be injected with

the products, he could be placed on the recall list.  In this way, Defendant attempted to induce Plaintiff to renounce his religious beliefs.

27.     On or about January 19, 2022, three of Defendant's employees met with Plaintiff in what Defendant called a "pre-disciplinary hearing" and confirmed that he had not been injected with the products.  That say, Defendant sent Plaintiff another letter suspending him without pay for (this time for 10 days) and, again, offering the inducement to renounce his beliefs by "voluntarily" resigning rather than waiting to be terminated.

28.     On or about February 3, 2022, Defendant terminated Plaintiff's employment expressly because of not being injected with a product advertised as a COVID-19 vaccine.

29.     At all material times, Defendant knew or should have known that the products advertised as COVID-19 vaccines do not, in fact, prevent recipients from catching and transmitting COVID-19.  Defendant could have accommodated Plaintiff's religious beliefs without undue hardship.

## **CLAIM FOR RELIEF**
### COUNT 1
Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a)

DOC discriminated against Howe on the basis of his religion

30.     Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

31.     Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

32.     Plaintiff informed Defendant of the conflict.

33. Defendant took adverse employment decisions against Plaintiff for his not complying with the employment requirement because of his conflicting religious belief, namely inducing denying that his beliefs are religious in nature, inducing him to renounce his beliefs, suspending him, terminating his employment, and terminating his Workers Compensation.

34. Defendant discriminated against Plaintiff on the basis of his religion (Christian) in violation of 42 U.S.C. § 2000e-2(a) as follows:

35. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate his religious beliefs that prohibit him from being injected with the products advertised as COVID-19 vaccines.

36. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from being injected with the products advertised as COVID-19 vaccines.

37. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from being injected with the products advertised as COVID-19 vaccines.

38. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

39. Defendant discriminated against Plaintiff on the basis of his religion in violation of the Civil Rights Act, Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a).

40. As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## COUNT 2

### Violation of the Massachusetts General Laws Chapter 151B

### DOC discriminated against Howe on the basis of his religion

41. Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

42. Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

43. Plaintiff informed Defendant of the conflict.

44. Defendant took adverse employment decisions against Plaintiff for his not complying with the employment requirement because of his conflicting religious belief, namely denying that his beliefs are religious in nature, inducing him to renounce his beliefs, suspending him, terminating his employment, and terminating his Workers Compensation.

45. Defendant discriminated against Plaintiff on the basis of his religion (Christian) in violation of Chapter 151B of the Massachusetts General Laws (M.G.L. c. 151B) as follows:

46. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate his religious beliefs that prohibit him from receiving the products advertised as COVID-19 vaccines.

47. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from receiving the products advertised as COVID-19 vaccines.

48. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from receiving the products advertised as COVID-19 vaccines.

49. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit him from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

50. Defendant discriminated against Plaintiff on the basis of his religion in violation of M.G.L. c. 151B.

51. As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court:

A. Order Defendant to rehire and reinstate Plaintiff with no loss of seniority;

B. Award Plaintiff damages, plus his costs and his reasonable attorney's fees, and

C. Order such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue so triable pursuant to Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

                                                   Respectfully Submitted
                                                   Matthew S. Howe
                                                   By His Attorney:

                                                 */s/ Peter Vickery*

                                                 Peter Vickery, Esq.
                                                 Bobrowski & Vickery, LLC
                                                 27 Pray Street
                                                 Amherst, MA 01002
                                                 BBO# 641574
                                                 Tel. (413) 992 2915
October 19, 2022                                Email: peter@petervickery.com