UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MATTHEW S. HOWE, <br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS DEPARTMENT <br> OF CORRECTION <br> Defendant. | Civil Action No. 4:22-cv-40119-MRG |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GUZMAN, J.

## I. INTRODUCTION

Plaintiff Matthew Howe ("Howe" or "Plaintiff") brings suit against his former employer, the Massachusetts Department of Correction ("Defendant" or "DOC"), for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a). [ECF No. 22]. The claim arose when Defendant terminated Howe from his position as a Correction Officer due to non-compliance with DOC's COVID-19 vaccination policy, after Howe's request for a religious exemption from receiving the vaccine was denied. [Id. ¶ 1]. Defendant filed a motion for summary judgment [ECF No. 30], arguing two main points: first, that Howe failed to demonstrate a sincerely held religious belief; and second, that accommodating Howe's request to remain unvaccinated would impose a substantial burden on DOC's operations. For the following reasons, the Court will allow the motion.

II.     **FACTUAL BACKGROUND**[1]

DOC is a public safety agency that oversees fourteen correctional facilities in the Massachusetts state prison system. [ECF No. 32 ¶ 34]. Howe was employed as a Correction Officer I at the Cedar Junction facility ("MCI—Cedar Junction") from November 3, 2013, until his termination on February 3, 2022. [ECF No. 25 ¶ 20; ECF No. 32 ¶ 61].

In that role, Howe was responsible for maintaining custodial care and control of incarcerated individuals ("I/Is"). [ECF No. 32 ¶ 62; ECF No. 32-7 ¶ 6]. He worked in close quarters

---

[1] There appears to be some confusion regarding whether Howe has admitted certain material facts in Defendant's Statements of Undisputed Facts [ECF No. 32]. Howe's Statement of Disputed Material Facts states: "Plaintiff *denies* that there are genuine issues remaining regarding following statements in Defendant's Statement of Undisputed Material Facts," and lists the paragraphs in question—8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 30, 37, 48, 49, 52, 54, 55, 63, 64, 70, 71, and 72." [ECF No. 34-6 at 1-5] (emphasis added). This denial suggests that Howe does not contest these facts. However, during the hearing on this motion, Howe' counsel asserted that he was not waiving the right to contest these facts, indicating an ongoing dispute. Nonetheless, during the hearing, Howe's counsel disputed only facts related to the efficacy of the COVID-19 vaccine, covered in paragraphs 8 through 21 of Defendant's statement. [ECF No. 32 ¶¶ 8-21].

Further, Howe's counsel did not contest facts related to the existence of the COVID-19 disease [ECF No. 32 ¶¶ 1-8], Executive Order 595 and its requirements, including the exemption process [id. ¶¶ 22-32, 56-60], DOC and its care for incarcerated individuals [id. ¶¶ 33-37], the importance of COVID-19 safety measures at DOC during the pandemic [id. ¶¶ 38-53], the impact of vaccine availability on DOC's operations [id. ¶¶ 54-55], Howe's job duties and responsibilities [id. ¶¶ 61-64], and the denial of Howe's request for an exemption [id. ¶¶ 65-72]. Consequently, the Court considers the facts in paragraphs 1 through 8, and 21 through 72 of Defendant's statement [Id. ¶¶ 1-8, 22-72] as admitted. See L.R., D. Mass. 56.1; Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 81 (D. Mass. 2021) ("When a party opposing summary judgment fails to dispute the facts presented by the moving party, those facts are deemed admitted.")

Additionally, Howe's Statement of Disputed Material Facts raises three questions regarding the vaccine's efficacy, such as, "(f)or how long, if at all, do COVID-19 vaccines protect the recipient against infection[?]" [ECF No. 34-6 at 1]. These are not admitted as facts. First, they are irrelevant to determining whether Howe faced religious discrimination. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (ruling that irrelevant or unnecessary factual disputes do not preclude summary judgment.) Second, these are not factual statements but rather inquiries, which similarly do not preclude the entry of summary judgment. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 6 (1st Cir. 1994) (finding that a party must identify and allege specific facts to demonstrate a genuine issue for trial).

with I/Is, often requiring direct physical contact. [ECF No. 32 ¶ 62; ECF No. 32-6 ¶ 6]. Howe's job duties required him to:

> "escort and transport I/Is under restraint, including to/from showers; patrol MCI—Cedar Junction; make periodic rounds, head counts and security checks of buildings, grounds, and I/I housing units; monitor I/Is' movements and whereabouts; oversee and direct I/Is during work assignments to maintain order and security; observe I/Is' conduct and behavior; investigate suspicious I/I activity, including by searching individuals, vehicles, packages, mail and I/I housing units; respond to emergency situations such as threats, assaults, and medical emergencies; supervise I/I visits, activities and work assignments; counsel, supervise and direct I/Is; act to prevent escapes and disorders; advise I/Is of appropriate medical, psychiatric or vocational services on an informal basis; screen visitors of I/Is; and serve food to I/Is."

[ECF No. 32 ¶ 62].

During the fall of 2021, the Commonwealth of Massachusetts ("the Commonwealth") faced a severe outbreak of COVID-19, a highly infectious disease capable of causing serious illness, hospitalization, and death. [ECF No. 32 ¶¶ 4-7]. In response, Governor Charlie Baker issued Executive Order 595 ("EO 595") on August 19, 2021. [Id. ¶ 22; ECF No. 32-2]. This order highlighted vaccination as the primary method to control the spread of COVID-19 and mandated that all Executive Department employees, including DOC employees, be vaccinated by October 17, 2021.[2] [ECF No. 32 ¶¶ 23-24; ECF No. 32-2 at 2]. Additionally, the order required state agencies to establish procedures to accommodate exemptions from the vaccination mandate for

---

[2] Howe disputes the assertion that COVID-19 vaccination will "prevent infection" or "prevent transmission." [ECF No. 34 at 14]. However, this is not the relevant issue in this case. The Court takes judicial notice of the CDC's guidance to Governor Baker, which informed the issuance of EO 595. Fed. R. Evid. 201(b), (f); see Does 1-6 v. Mills, 16 F.4th 20, 26 n.3 (1st Cir. 2021) (finding that the court may take judicial notice of facts which are capable of being determined by an assuredly accurate source) (citations omitted); Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information on CDC's website).

employees who could not be vaccinated due to medical disabilities or sincerely held religious beliefs. [ECF No. 32 ¶ 25; ECF No. 32-2 at 3-4].

In line with this directive, DOC implemented EO 595. [ECF No. 32 ¶ 27]. Achieving full vaccination of the workforce was critical in DOC facilities to reduce the transmission of COVID-19 and mitigate the severity of the disease among both staff and the incarcerated population, particularly those who are older or medically vulnerable. [Id. ¶ 48]. While quarantining, medical isolation, and social distancing were recommended as additional means to limiting the spread of the virus [Id. ¶¶ 38, 40], the nature of security measures in DOC facilities made these efforts extremely challenging. [Id. ¶ 41; ECF No. 32-6 ¶ 10]. As indicated by EO 595 and Centers for Disease Control and Prevention ("CDC") guidance, without near full vaccination of employees, both prisoners and staff at DOC, who interact regularly with DOC personnel, would be subjected to significant health and safety risks. [ECF No. 32 ¶ 63; ECF No. 32-6 ¶ 12].

On or about September 17, 2021, Howe sought a religious exemption under EO 595 by submitting a request to DOC. [ECF No. 32 ¶ 65; ECF No. 32-9]. In his request, he proposed that instead of vaccination, he be allowed to perform his duties while wearing a mask and undergoing periodic testing for the virus. [ECF No. 32 ¶ 65; ECF No. 32-9 at 3]. Howe did not request or suggest an alternative position that he could work that would require less in-person, social contact with others. A three-member panel ("DOC Panel"), primarily composed of DOC employees and operating under the direction of the Commonwealth's Human Resources Division (HRD), initially reviewed the request. [ECF No. 32 ¶¶ 58, 66; ECF No. 32-5 ¶ 3]. The panel conducted a telephone interview with Howe to discuss his beliefs and his prior vaccine and medication history. [ECF No. 32 ¶ 66; ECF No. 32-5 ¶ 5; ECF No. 32-8 at 5:17-23, 8:1-11].

Following their review, DOC Panel submitted Howe's exemption application to a three-member panel assembled by EOPSS (the "EOPSS Panel") for further assessment.[3] [ECF No. 32 ¶ 68; ECF No. 32-5 ¶ 6; ECF No. 32-3 ¶ 6]. In collaboration with DOC, the EOPSS Panel concluded that accommodating Howe was not feasible and denied his request. [ECF No. 32 ¶ 71; ECF. No. 32-5 ¶ 10; ECF No. 32-3 ¶ 11]. The EOPSS Panel determined that permitting him to work unvaccinated, given his essential duties involving close contact in a congregate care setting, would pose significant safety risks to inmates and coworkers. [ECF No. 32 ¶¶ 71-72; ECF No. 32-5 ¶ 9; ECF No. 32-3 ¶ 10].

DOC informed Howe of its decision by letter dated October 15, 2021. [ECF No. 32-5 ¶ 10; ECF No. 32-3 ¶ 11]. On January 13, 2022,[4] DOC informed Howe that he was suspended for five days without pay, advising him that he could avoid further adverse actions by "coming into compliance" with the vaccination mandate, i.e., by providing proof of vaccination. [ECF No. 22 ¶ 26]. A second pre-disciplinary was held on January 19, 2022, where Defendant informed Howe of his impending suspension due to noncompliance with EO 595. [ECF No. 25 ¶ 27]. Howe's employment was officially terminated on February 3, 2022, for failure to comply with EO 595. [ECF No. 25 ¶ 28; ECF No. 34-3 at 4].

### III.   PROCEDURAL HISTORY

Following his termination, Howe filed a timely charge with the United States Equal Opportunity Commission (EEOC) (Charge No. 523-2022-00526). [ECF No. 22 ¶ 5]. The EEOC issued a right-to-sue notice on August 30, 2022. [Id.] Subsequently, Howe initiated this case on

---

[3] DOC is a constituent agency of the Executive Office of Public Safety and Security ("EOPSS"). [ECF No. 32 ¶ 33].

[4] This delay was a result of the Howe sustaining a work-related injury, which necessitated medical leave until the end of December. [ECF No. 22 ¶ 25].

October 19, 2022, within the 90-day period required after receiving the EEOC notice. [Id. at 10.] Howe amended his complaint on November 1, 2023. [ECF No. 22]. Defendant filed its motion for summary judgment on April 30, 2024. [ECF No. 30]. The Court held a hearing on the motion on July 10, 2024, and took the motion under advisement. [ECF No. 37].

## IV. LEGAL STANDARD

A court may grant summary judgment when, making all inferences in favor of the nonmoving party, the evidence in the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84 (1st Cir. 2023) (quoting Fed. R. Civ. P. 56(a)). "An issue is 'genuine' when a rational factfinder could resolve it either direction." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome." Mu, 882 F.3d at 5 (quoting Borges, 605 F.3d at 5). To show a genuine dispute, the nonmoving party must "present affirmative evidence" rather than "rest upon mere allegation or denials of his pleading." N.Y. Life Ins. Co. v. Mabardy, 680 F. Supp. 3d 27, 29 (D. Mass. 2023) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)). To survive summary judgment, the nonmoving party must provide evidence that is "significantly probative" and more than "merely colorable." Anderson, 477 U.S. at 249, 264.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Under the statute, religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an

employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

The First Circuit applies a "two-part framework in analyzing religious discrimination claims under Title VII." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (citations omitted). To survive summary judgment, a plaintiff must first make a *prima facie* case that a bona fide religious practice conflicts with an employment requirement and caused an adverse employment action. Id. This *prima facie* case consists of three elements: (1) a bona fide religious practice conflicts with an employment requirement, (2) the plaintiff brought the practice to the employer's attention, and (3) the religious practice was the basis for the adverse employment decision. EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (citations omitted). To qualify as a bona fide religious practice, a plaintiff must show "both that the belief or practice is religious and that it is sincerely held." Id. at 56 (internal quotations and citations omitted). If the plaintiff meets their *prima facie* case, the burden shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. Id.

As recently clarified by the Supreme Court in Groff v. DeJoy, 600 U.S. 447 (2023), an accommodation constitutes an undue hardship when the burden it imposes is "substantial within the overall context of an employer's business." Id. at 468. In determining whether a burden is substantial, a court must consider all relevant factors related to the nature of the employer's operations. Id. at 470-71. This includes direct economic costs, such as the effects of the accommodation on staffing and overtime pay, as well as non-economic costs, like concerns over health and safety and reputational damage. Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 435 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022) (citing U.S. EQUAL EMP.

OPPORTUNITY COMM'N, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS: § L (2021)) (stating that costs include "the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public"); Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 136 (1st Cir. 2004) (finding that reputational concerns, including an employer's public image, are relevant to the undue hardship analysis).

V.     DISCUSSION

As explained further below, the Court grants Defendant's Motion for Summary Judgment due to the absence of any genuine issue of material fact regarding whether Howe's request to remain unvaccinated would impose a substantial burden on the operations of DOC. Even assuming Howe meets his *prima facie* case, Defendant has successfully demonstrated how accommodating an unvaccinated Correction Officer would cause undue hardship to DOC. There is no genuine dispute that allowing Howe to remain unvaccinated would significantly increase health and safety risks, risk reputational damage, and exacerbate staffing shortages and workflow disruptions.

A.  Plaintiff's *Prima Facie* Case

For summary judgment purposes, the Court assumes that Howe can establish a *prima facie* case that his refusal to take the vaccine is based on a bona fide religious practice. See Cloutier, 390 F.3d at 133 (concluding that, even if the employee had met her *prima facie* case, the employer should prevail because it fulfilled its obligations under the second part of the Title VII framework) (internal quotations omitted); see, e.g., Melino v. Bos. Med. Ctr., No. CV 22-12119-RGS, 2024 WL 2724145, at *1 (D. Mass. May 28, 2024); Haley v. Exec. Off. of Health & Hum. Servs., No. CV 23-11691-RGS, 2024 WL 1836480, at *1 (D. Mass. Apr. 26, 2024) ("Here, the court need not

decide whether [the plaintiff] has made [their] prima facie case because, even assuming [they have], [their] claim fails at the undue hardship stage").

In making this assumption, the Court acknowledges that determining whether Howe's proffered beliefs are religious or non-religious, and whether they are sincerely held, is a question for the fact-finder at trial. See Union Independiente, 279 F.3d at 56 ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment") (internal quotations omitted) (citations omitted); see also Cloutier v. Costco Wholesale, 311 F. Supp. 2d 190, 197 (D. Mass. 2004), aff'd, 390 F.3d 126; Antredu v. Massachusetts Dep't of Youth Servs., No. CV 22-12016-WGY, 2024 WL 1539725, at *4-5 (D. Mass. Apr. 9, 2024). The Court notes that the record contains minimal information to assess the sincerity or genuineness of Howe's beliefs, such as evidence of historical adherence to the beliefs he professes. Even assuming, for the sake of argument, that Howe has established his *prima facie* case, the existing facts do not support a conclusion of religious discrimination.

### B. Undue Hardship

#### 1. *Substantial Burden*

This Court finds that the accommodations Howe requested would have resulted in undue hardship for DOC. Howe's role at MCI—Cedar Junction, which involves close, sometimes hand-to-hand contact with inmates [ECF No. 32 ¶ 62], makes it impractical to accommodate him without compromising health and safety. Unlike a nurse who might work in a different unit or use protective gear, a correction officer like Howe cannot avoid close interactions. Furthermore, Howe did not suggest any viable alternative positions within DOC that would minimize contact with inmates or coworkers, nor did he demonstrate any qualifications or feasible ideas for such roles in

his exemption request. Instead, he suggested continuing his duties unvaccinated, supplemented by masking and frequent testing. [Id. ¶ 65]. This accommodation would impose both economic and non-economic costs on DOC, substantially burdening its operations.

Accommodating Howe would have increased DOC's economic costs, primarily through lost staff hours and increased overtime. His unvaccinated status would require other employees to assume many of his essential duties involving close contact with inmates or coworkers to mitigate infection risks. [Id.] This redistribution of responsibilities would be particularly unreasonable during a time when DOC was already facing staffing shortages due to COVID-19, with many employees absent due to illness in the fall of 2021. [Id.] By that time, staff absences had already compelled DOC to suspend certain programs temporarily and implement mandatory overtime to maintain adequate staffing levels. [Id. ¶¶ 47, 50]. Accommodating an unvaccinated employee like Howe would exacerbate the existing strain on DOC's operations.

On the non-economic front, Howe's accommodation would pose substantial health and safety risks to inmates and coworkers. Although masking and frequent testing are feasible measures and have proven effective in reducing the spread of COVID-19, they are not as protective as vaccination.[5] [Id. ¶¶ 55, 70]. Additionally, social distancing is impractical in Howe's role due to the requisite close contact with inmates and coworkers. [Id. ¶ 62]. The risk of disease transmission is particularly high in a confined, maximum security prison environment where many inmates have preexisting health conditions, such as Hepatitis C from previous drug use.[6] Reliable

---

[5] See, e.g., CDC, USE OF PFIZER-BIONTECH COVID-19 VACCINE IN PERSONS AGED ≥16 YEARS: RECOMMENDATIONS OF THE ADVISORY COMMITTEE ON IMMUNIZATION PRACTICES – UNITED STATES, SEPTEMBER 2021 (2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e2.htm.

[6] The Court takes judicial notice that "(s)tudies have shown that when compared to the general population, people of both sexes who are incarcerated are more likely to have high blood pressure, asthma, cancer, arthritis, and infectious diseases, such as tuberculosis, hepatitis C, and HIV." U.S.

scientific data conclusively shows that individuals with preexisting health conditions face a higher risk of serious illness and death from COVID-19.[7] Therefore, accommodating Howe could significantly heighten the risk of COVID-19 transmission among these already vulnerable groups.

Furthermore, Howe's request undermines DOC's core responsibilities, as mandated by statute. Mass. Gen. Laws ch. 124, § 1 stipulates that DOC provide care, custody, and programming to individuals under its supervision, ensuring the safety of everyone within its facilities. The public, including families of incarcerated individuals, relies on DOC to maintain the health of those in its care. Corrections officers play a pivotal role in this mission [ECF No. 32 ¶ 36], and effective supervision cannot be conducted from a safe distance or by someone posing an increased risk of infection.

In sum, allowing Howe to continue in his role unvaccinated would have increased overtime costs, exacerbated staffing shortages, and jeopardized the safety of inmates and staff. Moreover, any resulting outbreak would further strain staffing and undermine public trust in the agency and the overall corrections system. This amounts to an undue hardship.[8]

---

DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF DISEASE PREVENTION AND HEALTH PROMOTION, SOCIAL DETERMINANTS OF HEALTH LITERATURE SUMMARIES, § INCARCERATION, https://health.gov/healthypeople/priority-areas/social-determinants-health/literature-summaries/incarceration#:~:text=Studies%20have%20shown%20that%20when,%2C%20hepatitis%20C%2C%20and%20HIV, (last visited July 15, 2024).

[7] See, e.g., CENTER FOR DISEASE CONTROL AND PREVENTION (CDC), UNDERLYING MEDICAL CONDITIONS AND SEVERE ILLNESS AMONG 540,667 ADULTS HOSPITALIZED WITH COVID-19, MARCH 2020-MARCH 2021 (2021), https://www.cdc.gov/pcd/issues/2021/21_0123.htm.

[8] Courts within this District and across the country have deemed similar evidence adequate to establish undue hardship. See, e.g., Melino, 2024 WL 2724145, at *2 n.3 (finding that a nurse's request to remain unvaccinated would pose an undue hardship to Boston Medical Center, given her exclusive work with highly vulnerable patients, frequent interactions with other medical staff, and the hospital's imperative to maintain public trust by minimizing the risk of infection); Antredu, 2024 WL 1539725, at *5 (holding that a Group Worker's request to remain unvaccinated would pose an undue hardship to the Massachusetts Department of Youth Services

### 2. *Vaccine Efficacy*

Howe does not contest DOC's argument regarding the impracticality of his requested accommodations. Instead, he challenges whether the COVID-19 vaccine was the most effective method of preventing infection at the time.[9] The Court rejects this argument. This lawsuit is not the forum to litigate the science around the COVID-19 vaccine, which the nation's leading public health experts concluded is the best way to prevent the spread of the virus and the severity of the disease.[10] Further, this lawsuit is not the forum to retroactively litigate the decisions of public, democratically-elected officials who acted based on guidance from scientific experts to deal with an unprecedented emergency situation.[11] DOC has met its burden on substantial hardship and its motion for summary judgment is allowed.

## VI. CONCLUSION

For the foregoing reasons, the motion for summary judgment is **GRANTED**.

**SO ORDERED.**

Dated: July 25, 2024

                                             /s/ Margaret R. Guzman
                                             Margaret R. Guzman
                                             United States District Judge

---

due to his close contact with colleagues and clients, essential job functions involving physical restraint of youth, and the potential loss of client confidence upon learning that Group Workers were unvaccinated); see also Conner v. Raver, 2023 WL 5498728, at *6 (N.D. Cal. Aug. 24, 2023); Beickert v. N.Y.C. Dep't of Educ., 2023 WL 6214236, at *5-6 (E.D.N.Y. Sept. 25, 2023).

[9] Howe's memorandum in opposition to summary judgment states, "[i]f the vaccines worked, it would not be difficult for Defendant to establish undue hardship." [ECF No. 34 at 10].

[10] CENTER FOR DISEASE CONTROL AND PREVENTION (CDC), *supra* note 6.

[11] For these same reasons, the Court denies Howe's motion to strike the declaration of Dr. Lawrence Madoff. [ECF No. 33]. Not only is this challenge to accepted science irrelevant to whether Howe faced religious discrimination, the Court does not need to rely on Dr. Madoff's testimony to take judicial notice of the CDC's guidance on the same topics.